ROBERTA A. GUARASCIO *v.*
ANTHONY R. GUARASCIO
(AC 27685)

Gruendel, Lavine and Foti, Js.

Argued November 27, 2007—officially released January 22, 2008

*David N. Rubin,* for the appellant (defendant).

*Gwen E. Adamson,* with whom was *Dominick J. Rutigliano,* for the appellee (plaintiff).

FOTI, J. The defendant, Anthony R. Guarascio, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Roberta A. Guarascio. He claims that the court improperly (1) included in its alimony order a percentage of future additional gross income, (2) failed to make any finding as to whether the plaintiff's interest in the Adam F. Fusco family trust and the estate of Adam F. Fusco was a marital asset, and (3) ordered him to pay the plaintiff's COBRA[1] insurance premium for three years. We disagree and affirm the judgment of the trial court.

The court found the following facts. The plaintiff and the defendant were married in Branford on November 29, 1979. They have two children from this marriage, who have reached the age of majority. The plaintiff has been working on a part-time basis since the younger child was born and is currently working twenty hours a week as a part-time secretary at Joel Barlow High School in Redding. The plaintiff is unable to work full-time for both emotional and physical reasons. The defendant became involved with another woman with whom he was living at the time of trial. He claimed, however, that his relationship with this woman was his only extramarital relationship and that it commenced long after his marriage had broken down. The court also noted that the plaintiff admitted that she was partially responsible for the breakdown of the marriage. The court found that "[w]hile the marriage was far from ideal, [the defendant's] decision to establish a sexual liaison with the forty-two year-old [woman] after twenty-five years of marriage was the breaking point of the marriage." The court found that the defendant was responsible primarily for the breakdown of the

---

[1] See the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161 through 1168.

marriage. The court also found that he had been financially successful. At the time of trial, he was employed at Search Space Corporation as chief financial officer and earned approximately $250,000 annually. In addition, the court found that he anticipated an annual bonus of up to $100,000.

The court stated that it had considered all of the criteria set forth in General Statutes §§ 46b-81 and 46b-82 in entering its orders. The court's orders were, inter alia, that the dissolution of marriage was granted, that the defendant had to pay the plaintiff's COBRA premium for three years and that the defendant would pay to the plaintiff a sum equal to a percentage of his additional gross income, which included but was not limited to cash payments, bonuses and vested stock options according to a set scale.

First we set forth the legal principles that guide our review of the defendant's claims. "The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Internal quotation marks omitted.) *Bartel* v. *Bartel*, 98 Conn. App. 706, 709, 911 A.2d 1134 (2006).

I

The defendant first claims that the court improperly included in its alimony order a percentage of future additional gross income. We disagree.

In its order, the court stated that the defendant would have to pay to the plaintiff a sum equal to a percentage of his additional gross income, which would include but not be limited to cash payments, bonuses and vested stock options.[2] The defendant argues that the court could not make this order because it was making a modification of alimony without a showing of a substantial change of circumstances. We are not persuaded by this argument.

The defendant argues that there was no evidence before the court as to any income from the defendant's employment in excess of his salary and a targeted bonus of $100,000, which was not certain and of which there was no track record in the defendant's new employment. The court found, however, that the defendant anticipated an annual bonus of up to $100,000. This finding was supported by the record. The plaintiff submitted the defendant's employment agreement, which noted that a target bonus of $100,000 was in place for the first year of employment. The defendant also testified that he "hoped" he would earn the bonus that was mentioned in his employment agreement as additional compensation for his job.

Additionally, the defendant argues that the court improperly modified an alimony order without sufficient evidence of a substantial change in circumstances. We do not agree. First, we are not persuaded that there is any indication in the court's memorandum of decision that this order constitutes a modification.[3] Second, this

---

[2] The court set out a scale for the defendant to follow in calculating what percentage of his "additional gross income" he would have to pay to the plaintiff. The scale was: "(a) $0 to $150,000 = 30 percent; (b) $150,000 to $300,000 = 25 percent; (c) $300,000 to $500,000 = 20 percent; (d) The [defendant] shall retain 100 percent of any gross bonus, etc., above $500,000."

[3] The defendant also argues that the court improperly shifted the burden of proof regarding future modification of alimony to the party opposing a modification. We find this argument untenable because we are not persuaded that the order constituted a modification.

court has held that "the trial court may include in a periodic alimony award a future share in the spouse's earned income should it be increased at some point in the future." *Lawler* v. *Lawler*, 16 Conn. App. 193, 196–97, 547 A.2d 89 (1988), appeal dismissed, 212 Conn. 117, 561 A.2d 128 (1989). In *Lawler*, the trial court had stated that the alimony the defendant had been ordered to pay to the plaintiff would automatically be increased on a weekly basis by a cost of living factor, and the cost of living factor would be based on 60 percent of the percentage of the gross increase that the plaintiff actually received from his employer. Id., 196. This court held that the trial court did not abuse its discretion in fashioning this order. In addition, this court held that "[t]o allow the trial court to provide in the dissolution decree for future adjustments in periodic alimony is consistent with the well established principle that an alimony order is predicated upon the obligation of support that spouses assume toward each other by virtue of the marriage . . . rather than by virtue of some potential inheritance." (Citation omitted; internal quotation marks omitted.) Id., 198.

In the present case, the court ordered the defendant to pay to the plaintiff a sum equal to a percentage of his additional gross income, should he gain any, according to a scale set out by the court. See footnote 2. The court stated that "[t]o require the payee to go to court every year to determine net income defies logic and would fly in the face of judicial economy." Therefore, it was more efficient and practical for the court to fashion this order than to order the defendant to pay the plaintiff every time he acquired additional income. This court previously has upheld court orders that have awarded a party a percentage of the other party's future bonuses. See *Finan* v. *Finan*, 100 Conn. App. 297, 306, 918 A.2d 910 (upholding award of percentage amount of future cash bonuses paid to defendant

rather than set dollar value), cert. granted on other grounds, 282 Conn. 926, 926 A.2d 666 (2007); *Bartel* v. *Bartel*, supra, 98 Conn. App. 713 (holding that court abused discretion by failing to include defendant's annual bonus as source of income in determining weekly net income); *Burns* v. *Burns*, 41 Conn. App. 716, 727–28, 677 A.2d 971 (upholding order awarding plaintiff 20 percent of defendant's earned income above his salary base), cert. denied, 239 Conn. 906, 682 A.2d 997 (1996). The court's award in this case was not improper.

The defendant also claims that the court improperly ordered a modification of alimony based on future changes of income without holding a hearing to determine the net income of the parties. He claims that the modification was based improperly on the gross income of the parties. We already have concluded that we are not persuaded that the court's order regarding the defendant's bonus was a modification. We also conclude that the court did not *base* this order on gross income but instead conclude that the order was a *function of* gross income. In its order, the court stated that the defendant had to pay the plaintiff a sum equal to a percentage of his "additional gross income . . . ." Nevertheless, just prior to making the orders, the court stated that "[i]t is well settled that the court must base its alimony orders on the available net income of the parties." Furthermore, the court stated that it was "well aware that gross earnings are not a criterion for awards of alimony." It is clear, therefore, that the court did not base the alimony order regarding the defendant's bonus on gross income.

This court drew the distinction between an order *based on* gross income and an order that is a *function of* gross income in *Medvey* v. *Medvey*, 98 Conn. App. 278, 284, 908 A.2d 1119 (2006). This court explained this distinction in stating that "[b]y 'function of gross

income,' we mean that the court used gross income to calculate its orders, which is distinguishable from the court basing its order on gross income." Id. The defendant claimed in that case that because the court in its decision referred only to gross income, and not net income, its order was based solely on gross income and was therefore improper. Id., 281. This court held that in light of the evidence presented and the findings made by the trial court, it was not convinced that the order was based on the plaintiff's gross income. This court concluded, instead, that it was a function of gross income. Id., 284.

In the present case, we similarly conclude that the court's order was a function of gross income and was not based on gross income. Just as in *Medvey*, the court in the present case had several exhibits before it, including financial affidavits of both the plaintiff and the defendant, the defendant's payroll statements and the defendant's employment contract agreement. Furthermore, the court stated that it "carefully considered all of the criteria set forth in §§ 46b-81 and 46b-82 . . . in entering its orders." Finally, the court stated that it had considered the plaintiff's and the defendant's "gross income and net income, in entering its orders of alimony . . . ." Because the court had all of these exhibits at its disposal, we conclude that the court was informed adequately about the defendant's financial status. On the basis of the evidence presented to the court and the findings and conclusions made by the court, we conclude that the court's order was made as a function of gross income and was not based on gross income. As a result, we conclude that the court did not abuse its discretion in including in its alimony order a percentage of future additional gross income.

II

The defendant also claims that the court failed to make any finding as to whether the plaintiff's interest

in the Adam F. Fusco family trust and the estate of Adam F. Fusco was a marital asset. We decline to review this claim.

The court did not mention the Adam F. Fusco family trust or the estate of Adam F. Fusco in its memorandum of decision. It mentioned only the Margaret Fusco family trust.[4] The defendant did not file a motion for articulation to clarify how the court was characterizing the Adam F. Fusco family trust or the estate of Adam F. Fusco after the memorandum of decision was released. Therefore, he failed to present an adequate record for review on appeal. "It is well settled that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision . . . ." (Internal quotation marks omitted.) *Shobeiri* v. *Richards*, 104 Conn. App. 293, 295, 933 A.2d 728 (2007). "An [appellant's] failure to seek an articulation of the trial court's decision to clarify the . . . issues and to preserve them properly for appeal leaves this court without the ability to engage in a meaningful review." (Internal quotation marks omitted.) Id., 295–96. "The duty to provide this court with a record adequate for review rests with the appellant." (Internal quotation marks omitted.) Id., 296. "Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us respecting [a] claim would be entirely speculative." (Internal quotation marks omitted.) Id.

---

[4] The court found that the assets presented in the Margaret Fusco family trust should not be considered part of the plaintiff's marital assets because the trust agreement provides that the plaintiff's mother reserves the right to revoke or to modify the trust agreement at any time. Therefore, the court concluded, "the trust established by the plaintiff's mother is not yet property which is part of the plaintiff's estate and thus subject to distribution under [§ 46b-81]."

In the present case, the defendant did not file a motion for articulation after reading the memorandum of decision and noting that the Adam F. Fusco family trust and the estate of Adam F. Fusco had not been discussed. Therefore, the court never articulated how it was going to characterize the Adam F. Fusco family trust and the estate of Adam F. Fusco. Because the defendant failed to provide this court with an adequate record for review, we cannot review the merits of this claim.

## III

Finally, the defendant claims that the court improperly ordered the defendant to pay the plaintiff's COBRA premium for three years. We disagree.

The defendant argues that there is no statutory authority for the court to order either spouse to pay for the medical insurance for the other spouse. Additionally, he claims that because the court did not designate COBRA as additional alimony, the payments will not terminate on the death of either party or the remarriage of the plaintiff, and the payments will not qualify as tax deductions for the defendant. We are not persuaded.

First, the court is given wide discretion in fashioning financial awards in an action for a dissolution. Under § 46b-82,[5] the amount and duration of an alimony payment are left entirely within the discretion of the court.

---

[5] General Statutes § 46b-82 (a) provides in relevant part: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order pursuant to subsection (b) of this section or an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. The court may order that a party obtain life insurance as such security unless such party proves, by a preponderance of the evidence, that such insurance is not available to such party, such party is unable to pay the cost of such insurance or such party is uninsurable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of

In addition, our Supreme Court has noted that in actions for divorce or dissolution of marriage, the courts have equitable powers, which are not necessarily enumerated in the statutes governing such actions. *Pasquariello* v. *Pasquariello*, 168 Conn. 579, 585–86, 362 A.2d 835 (1975). The court has stated: "The power to act equitably has allowed the [trial] court on occasion to order a party to change his group life insurance policy to include his wife as an irrevocable beneficiary . . . pay to third parties accounting fees and investigatory fees [and] pay the expenses of an appeal . . . . These powers, although not expressly given to the court by statute, have been held to be inherent powers of the trial court in actions for divorce or dissolution of marriage." (Citations omitted.) Id. In the present case, the court acted equitably in ordering the defendant to pay the plaintiff's COBRA premium for three years. In fact, it is not uncommon for a court to fashion this financial remedy. See *Tauck* v. *Tauck*, Superior court, judicial district of Middlesex, Docket No. FA-05-4004889-S (September 21, 2007) ("husband shall maintain COBRA medical and dental insurance for the benefit of the wife at his expense for the maximum period allowed by law"); *Palczynski* v. *Palczynski*, Superior Court, judicial district of Middlesex, Docket No. FA-04-4000946-S (August 7, 2007) ("husband shall maintain COBRA medical and dental insurance for the benefit of the wife at his expense for the maximum period allowed by law"); *St. Jean* v. *St. Jean*, Superior Court, judicial district of Hartford, Docket No. FA-05-4017548-S (November 22, 2006) ("[h]usband shall pay as additional alimony the cost of maintaining the [w]ife on his health insurance plan available to him through his employer, i.e., COBRA, for a period of three years or until such time as [w]ife

the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

obtains insurance through her work, whichever comes first"). Therefore, the court did have the authority to order the defendant to pay the plaintiff's COBRA premium for three years.

In addition, the fact that the court did not explicitly designate the COBRA payments as "additional alimony" does not prevent them from being considered as additional alimony. Therefore, the defendant's concern that the payments will not terminate upon the death of the plaintiff or upon her remarriage to another person and that the payments will not be deductible for his taxes is unfounded. In *Dombrowski* v. *Noyes-Dombrowski*, 273 Conn. 127, 134, 869 A.2d 164 (2005), the defendant claimed that the trial court had classified lottery winnings improperly as alimony because the court did not explicitly state that the liability of the payor terminated at the death of the payee. Our Supreme Court was not persuaded. It held that "[i]t is clear from this record that the trial court intended its order to meet [the requirements of termination upon the death of the payee, taxability to the payee and deductibility to the payor]. Thus, it must be read as implicitly providing for the termination of the defendant's obligation upon the death of the plaintiff." Id., 135. The court also held that "absent contrary language, the death of the obligor spouse terminates the obligation to pay periodic alimony . . . ." (Citation omitted.) Id.

In the present case, it is also clear that the court intended its order to meet the requirements of alimony, namely, that the payments would terminate upon the death of the plaintiff, that the plaintiff would incur taxes on the payments and that the defendant would be able to deduct the payments from his taxes. There is nothing in the court's order to the contrary of those requirements. Furthermore, in addition to the case law cited, there is also statutory authority for terminating alimony payments upon a showing that a party is cohabiting.

See General Statutes § 46b-86 (b).[6] Because the court had the authority to order the COBRA payments and because the payments met the requirements of alimony, we conclude that the court did not abuse its discretion in ordering the defendant to pay the plaintiff's COBRA premium for three years.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] General Statutes § 46b-86 (b) provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the Superior Court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party.