MARICICA GYERKO *v.* ZSIGMOND GYERKO
(AC 28693)

DiPentima, Lavine and Beach, Js.

Argued November 14, 2008—officially released March 24, 2009

*George W. Kramer*, for the appellant (defendant).

*Donald F. Reid* filed a brief for the appellee (plaintiff).

*Opinion*

LAVINE, J. In this marital dissolution action, the defendant, Zsigmond Gyerko, appeals from the judgment of the trial court with respect to the court's financial orders. The defendant claims that the court

improperly (1) found that the parties owned an apartment in Romania worth $35,000 to $40,000, (2) failed to find that the plaintiff, Maricica Gyerko, owned property in Romania, (3) found that each party contributed $50,000 to the purchase of the marital home, (4) found that the plaintiff contributed $48,000 to paying down the mortgage on the marital home, (5) considered factors listed in General Statutes §§ 46b-81 and 46b-82 and (6) precluded testimony from his witness.[1] We affirm the judgment of the trial court.

The following facts, as found by the court, are relevant for our consideration of the appeal. The parties married on February 25, 1974, in Brasov, Romania. They had two daughters who were adults at the time of the dissolution proceedings. In 1988, the parties left Romania for Greece and in 1990 arrived in the United States. After living in New York City from 1990 until 2000, the parties relocated to Connecticut. They purchased the marital home in Bethany in 2001.

The plaintiff filed for divorce on May 17, 2005. The court rendered judgment dissolving the marriage. The court concluded that the marriage had broken down irretrievably and that the defendant solely was responsible for its breakdown. After stating that it had considered carefully the factors enumerated in General Statutes §§ 46b-62, 46b-81, 46b-82 and other relevant statutes, the court ordered each party to be responsible for his or her own health insurance and debts and to retain his or her pension and checking accounts. The court ordered no alimony for either party. It awarded the marital home, with an estimated value of $300,000,

---

[1] The defendant also claimed in his brief that the court improperly granted the plaintiff's motion to hold him in contempt for refusing to sign a quitclaim deed while his appeal was pending. At oral argument, however, the defendant's counsel stated that this claim was moot. We, therefore, do not address it. See, e.g., *PNC Bank, N.A.* v. *Kelepecz*, 289 Conn. 692, 709 n.9, 960 A.2d 563 (2008).

to the plaintiff and ordered her to give the defendant $50,000, or the equivalent of his share of the down payment on the home. The court also awarded the defendant $4100 for his minimal contributions to the upkeep of the home minus the expenses caused by his wilful destruction of the home. The defendant was awarded the parties' apartment in Romania. Additional facts will be set forth as necessary.

"Our standard of review for financial orders in a dissolution action is clear. The trial court has broad discretion in fashioning its financial orders . . . ." *Casey* v. *Casey*, 82 Conn. App. 378, 383, 844 A.2d 250 (2004). "[T]his court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Internal quotation marks omitted.) *Guarascio* v. *Guarascio*, 105 Conn. App. 418, 421, 937 A.2d 1267 (2008).

"In pursuit of its fact-finding function, [i]t is within the province of the trial court . . . to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary

inferences therefrom." (Internal quotation marks omitted.) *Blum* v. *Blum*, 109 Conn. App. 316, 329, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008).

I

The defendant's first claim on appeal is that the court improperly found that the parties owned an apartment in Romania. The defendant argues that the court's finding that the parties own an apartment worth $35,000 to $40,000 is not supported by any evidence because both parties testified at trial that the Romanian government confiscated the apartment after they left Romania in 1988. We disagree.

The following additional facts are relevant to our resolution of this issue. In her amended prayer for relief, the plaintiff asked the court to award to the defendant the apartment jointly owned by the parties in Romania. At trial, the plaintiff testified that the parties purchased an apartment in Brasov, Romania, after they were married and moved into it in 1978. She submitted into evidence a notarized deed in the defendant's name for an apartment in Brasov, Romania, issued on October 7, 1980, and specifying the address of the apartment. She further testified that the Romanian government confiscated the apartment after the parties left Romania in 1988. She, however, testified that pursuant to the laws of the European Union, of which Romania is a member, rightful owners of confiscated property can regain their legal title to it. She also testified that the defendant informed her that he had started the process of regaining the apartment during one of his numerous visits to Romania. She estimated the value of the apartment to be between $35,000 and $40,000. On cross-examination, the plaintiff stated that her estimate of the value was based on the amount the parties' friends obtained for a similar apartment.

The defendant testified that the apartment had been confiscated by the Romanian government, that he unsuccessfully tried to get it back on multiple occasions and that he would be very happy to give it to his wife, if he ever regained it.

In its memorandum of decision, the court found that "[t]he parties own an apartment in Romania . . . . The more credible evidence is that it's worth $35,000 to $40,000. [The defendant] has traveled to Romania frequently." (Citation omitted.) The court also found that the defendant had hidden earnings throughout the marriage and altered documents in the court file.

General Statutes § 46b-81, which governs distribution of the parties' assets in a marital dissolution action, lists the factors that the court must take into account when "fixing the nature and value of the property, if any, to be assigned" to the parties.

"With respect to the court's credibility determinations, this court is compelled to state, what has become a tired refrain, [which is that] *we do not retry the facts or evaluate the credibility of witnesses. . . . It is the sole province of the trial court to weigh and interpret the evidence before it and to pass upon the credibility of witnesses*." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Doody* v. *Doody*, 99 Conn. App. 512, 519–20, 914 A.2d 1058 (2007).

"It is [also] within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Internal quotation marks omitted.) *Guarascio* v. *Guarascio*, supra, 105 Conn. App. 421. "A finding of fact is clearly erroneous when

there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Schade* v. *Schade*, 110 Conn. App. 57, 66, 954 A.2d 846, cert. denied, 289 Conn. 945, 959 A.2d 1009 (2008).

The issue before us, therefore, is whether the court's finding that the parties owned an apartment in Romania was clearly erroneous in light of the evidence in the record. We conclude that it was not. The plaintiff submitted into evidence a notarized deed to the apartment bearing the defendant's name. The deed's authenticity had not been challenged by the defendant. The court heard conflicting testimony from the parties regarding their legal right to regain the apartment, which was confiscated during the communist regime in Romania. The defendant offered no evidence refuting the plaintiff's testimony that because Romania is a member of the European Union and bound by its laws, the parties are rightful owners of the apartment that was unlawfully seized by the country's past regime. "The trial court is the arbiter of credibility, and it may accept all, some or none of a witness' testimony." *Crews* v. *Crews*, 107 Conn. App. 279, 313, 945 A.2d 502, cert. granted on other grounds, 288 Conn. 901, 952 A.2d 809 (2008).

On the basis of our review of the record, we also conclude that the court's finding that the apartment was worth $35,000 to $40,000 was not clearly erroneous. The court heard the plaintiff's uncontroverted testimony that an apartment owned by the parties' friends and similar to theirs was sold for that amount. "Nothing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. . . . Ultimately, the determination of the value of the land depended on the considered judgment of the [trial court], taking into

account the divergent opinions expressed by the witnesses and the claims advanced by the parties." (Internal quotation marks omitted.) *Melillo* v. *New Haven*, 249 Conn. 138, 153, 732 A.2d 133 (1999).

We conclude that the court's finding that the parties owned an apartment in Romania whose estimated value was $35,000 to $40,000 was supported by the evidence in the record and therefore was not clearly erroneous.

## II

The defendant's second claim is that the court improperly failed to find that the plaintiff owned property in Romania. The defendant essentially argues that the court's finding was clearly erroneous because the court did not credit his testimony, unsupported by other evidence, and because the plaintiff failed to dispute that testimony or cross-examine him on this issue. We do not agree.

We set forth the following relevant facts. At trial, the defendant testified that the plaintiff owned property, a house and perhaps some land, in her hometown in Romania. He testified that he knew that the plaintiff owned the property because he was a co-owner and "had a paper on it" but that the plaintiff hid it from him. The defendant also testified that the value of that property was $40,000. The defendant's counsel did not question the plaintiff regarding this issue.

We conclude that the court's failure to find that the plaintiff owned property in her hometown in Romania was not clearly erroneous. The fact that the plaintiff did not offer testimony on this issue and failed to cross-examine the defendant is not determinative. As we stated previously, the court is the sole arbiter of witness credibility, and it has the right to reject even uncontested evidence. See *Blum* v. *Blum*, supra, 109 Conn. App. 329. The only evidence before the court was the

defendant's testimony, unsupported by a deed or any other document, and devoid of basic information, such as the address of the property or the name of the plaintiff's hometown. This is not a case in which the undisputed probative evidence was so overwhelming that the court was not free to disregard it. See *Gianetti v. Norwalk Hospital*, 266 Conn. 544, 560–61, 833 A.2d 891 (2003).

We conclude that the court's failure to accept the defendant's testimony and to find that the plaintiff owned property in Romania was not clearly erroneous.

### III

The defendant's third claim is that the court's finding that each party contributed $50,000 to the purchase of the marital home was clearly erroneous. The defendant argues that a review of the evidence concerning the parties' financial history reveals that the plaintiff could not have contributed $50,000 toward the down payment on the parties' home in 2001. We disagree.

The following facts are relevant. The court found that while the parties resided in Greece between 1988 and 1990, the plaintiff worked as a nurse while the defendant worked in an auto body shop. After they arrived in New York in 1990, the plaintiff worked as a medical assistant in a physician's office. In 1994, the plaintiff enrolled in the nursing program at the Bronx Community College and later transferred to the College of Mount Saint Vincent. The plaintiff testified that she covered her college expenses with student loans in the amount of $16,000 and her savings. The court found that the defendant did not support the family during the plaintiff's schooling and that, during the last two years of her schooling, she received welfare benefits and food stamps.

The plaintiff graduated in 1998 or 1999, and immediately started working as a nurse. Between 1990 and

2000, the parties lived in a rented apartment in New York. In 2000, the plaintiff accepted a position as a registered nurse at Yale-New Haven Hospital. The plaintiff testified that the parties had a joint savings account in 2001 in the amount of $150,000.

The court found that in 2001, the parties purchased the marital home, each contributing $50,000 for the down payment. The plaintiff's annual salary is currently $60,000 to $65,000. The court also found that, in addition to making most mortgage payments and covering bills and expenses on the marital home, the plaintiff contributed an additional $48,000 toward the principal balance on the mortgage in 2004. She also has invested $10,000 in improvements to the marital home since purchasing it in 2001.

We conclude that the court's finding that the plaintiff contributed $50,000 toward the purchase of the marital home was not clearly erroneous. The gist of the defendant's argument is that the plaintiff could not have earned enough money between 1998 and 2001 to save $50,000 and pay off her student loans. The court, however, found that the plaintiff's current annual income is between $60,000 and $65,000 and that she worked as a nurse in New York and Connecticut for three years before she contributed $50,000 toward the down payment on the parties' home. The defendant offered no evidence contradicting the plaintiff's testimony. The defendant also offered no evidence regarding the plaintiff's income or the parties' living expenses while they resided in New York. The court heard testimony that the parties had a joint bank account in 2001 in the amount of $150,000. Three years later, in 2004, the plaintiff contributed another $48,000 toward the principal balance on the mortgage, and she managed to contribute $10,000 toward the improvements to the home. The defendant's argument that the plaintiff could not have

saved $50,000 between 1998 and 2001 is therefore unsupported by any evidence in the record.

In light of the court's findings regarding the plaintiff's thrift, as evidenced by her subsequent investments into the marital home, we conclude that the court's conclusion that the plaintiff contributed $50,000 toward the purchase of the parties' home in 2001 was not clearly erroneous.

IV

The defendant's fourth claim is that the court improperly found that the plaintiff contributed $48,000 to the principal balance of the mortgage loan on the parties' home in 2004. The gist of the defendant's argument is that some or all of that money originated from a repayment of the loan the parties made jointly to their daughter in 2002 or 2003 and for which the defendant had not received any credit. We are unable to reach the merits of the defendant's claim due to an inadequate record.

The following facts are relevant. The court found in its memorandum of decision that the plaintiff contributed $48,000 toward the principal balance of the parties' mortgage loan. The plaintiff testified that in June, 2004, she contributed $40,000 from her savings account toward the balance. The plaintiff submitted into evidence a check documenting that transaction. She further testified that she contributed another $8000 in July, 2004, and submitted into evidence a check documenting that transaction.

The parties' daughter, Magdalena Gyerko, testified during cross-examination by the defendant's counsel that her parents lent her $40,000 in 2002 or 2003. She stated that she returned $35,000 to the plaintiff and $5000 to the defendant. She also stated that she did not

know whether the plaintiff shared any of the $35,000 with the defendant.

The defendant does not dispute that the plaintiff contributed $48,000 toward the principal balance of the mortgage loan in 2004. He is asking us, however, to conclude that the court should have found that some of the $48,000 contributed by the plaintiff originated from the $35,000 that the parties' daughter repaid to the plaintiff and that, therefore, the defendant "did not receive any credit for his share of the borrowed money . . . ." The court made no factual findings regarding the issue of the daughter's testimony or the link between the plaintiff's contribution to the principal balance of the mortgage loan and the money she received from her daughter. The defendant failed to ask the court to articulate its finding that the plaintiff contributed $48,000 of her funds in light of the daughter's testimony that the parties jointly lent her $40,000 one or two years earlier. The defendant has not provided this court with an adequate record for review, and we, therefore, cannot review the merits of his claim. See *Guarascio* v. *Guarascio*, supra, 105 Conn. App. 426–27.

V

The defendant's fifth claim is that the court improperly considered the factors enumerated in §§ 46b-81 and 46b-82 in distributing the parties' marital assets.[2] The defendant argues that the court should have considered

[2] The defendant ambiguously claims in his brief that "[t]he [c]ourt erred in failing to consider the statutory factors in General Statutes §§ 46b-81 and 46b-82, that [he] was solely responsible for the breakdown of the marriage . . . ." In his conclusion regarding this claim, however, the defendant states that he "received less than even his contribution to the marital home." On the basis of the briefs and oral arguments, we therefore construe the defendant's claim to be that the court improperly considered the factors enumerated in §§ 46b-81 and 46b-82, and not that the court improperly concluded that the defendant was solely responsible for the breakdown of the parties' marriage.

that the defendant was sixty-two and living in a homeless shelter at the time of the trial, his employment, his income and the length of the parties' marriage.

The following facts are relevant. In its memorandum of decision, the court found that the defendant paid his share of family expenses while the parties lived in New York between 1990 and 1996. After the plaintiff enrolled in college, the defendant stopped supporting the family, and the plaintiff applied for welfare assistance and food stamps. The court found that between 2001 and 2004, the defendant rarely paid household expenses or made mortgage payments. It also found that the plaintiff invested $10,000 in improving the marital home.

The court found that the defendant felled trees in the yard and painted interior rooms and the deck but that he also destroyed interior portions of the home while enraged. In addition to working full-time as a nurse, the plaintiff did all the cooking, cleaning and shopping for the family. The court found that the plaintiff left her employment at Yale-New Haven Hospital due to stress at home because of the defendant's refusal to work, although the defendant had no documented mental issues and no physical issues except for a slight hearing loss he has had since childhood. The court found that the plaintiff suffered from chronic back pain, which would require surgery if her employer did not continue to make accommodations for her disability.

The court found that the defendant, throughout the marriage, continuously verbally and physically abused the plaintiff and their daughters. It also found that the defendant has a violent temper and drinks alcohol excessively. In 2006, the defendant caused a fire at the parties' home after he fell asleep surrounded by liquor bottles. The defendant stalks the parties' younger daughter, and, when she worked as a bus girl and waitress from age twelve onward, he attempted to steal her

earnings. The court also found that the defendant had hidden his earnings from the plaintiff throughout the marriage and that at one point he had asked the parties' younger daughter to hold $40,000 for him. The court concluded that the marriage between the parties had broken down irretrievably and that the defendant was solely responsible for its breakdown.

On the basis of its findings, and after stating that it had carefully considered the evidence and the factors enumerated in §§ 46b-62, 46b-81 and 46b-82,[3] the court awarded the plaintiff exclusive possession and sole ownership of the parties' marital home and ordered her to give the defendant $50,000 that he originally contributed to the down payment on the marital home, along with $4100, which is the equivalent of his contributions to the upkeep of the home minus the cost of his wilful destruction of it.

General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree . . . dissolving a marriage . . . the [trial court] may assign to either the husband or wife *all or any part of the estate of the other*. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect. . . . (c) In fixing the nature and value of the property, if any, to be assigned, the court . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also

---

[3] General Statutes §§ 46b-62 and 46b-82 address orders for payment of attorney's fees in certain actions and alimony, respectively.

consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." (Emphasis added.)

"In fashioning its financial orders, the court has broad discretion, and [j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the questions of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . . That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties. . . . Further, [i]n distributing the assets of the marital estate, the court is required by [General Statutes] § 46b-81 to consider the estate of each of the parties. . . . General Statutes § 46b-81 (a) provides in relevant part: At the time of entering a decree . . . dissolving a marriage . . . the [trial court] may assign to either the husband or wife all or any part of the estate of the other. . . . Courts are not required to ritualistically recite the criteria they considered, nor are they bound to any specific formula respecting the weight to be accorded each factor in determining the distribution of marital assets." (Citation omitted; internal quotation marks omitted.) *Sapper* v. *Sapper*, 109 Conn. App. 99, 107–108, 951 A.2d 5 (2008).

"The trial court must consider all relevant statutory criteria in a marital dissolution action but it does not have to make express findings as to the applicability of each criteria. . . . [It] may place varying degrees of importance on each criterion according to the factual circumstances of each case." (Citation omitted.) *Burns*

v. *Burns*, 41 Conn. App. 716, 725–26, 677 A.2d 971, cert. denied, 239 Conn. 906, 682 A.2d 997 (1996).

We conclude that the court did not abuse its discretion in making the aforementioned financial orders. In addition to awarding the parties' apartment in Romania to the defendant, the court ordered the plaintiff to give him the equivalent of the money he initially invested in the marital home and the minimal contributions to the maintenance of the home he made throughout the years. After the parties jointly purchased the home, the plaintiff made almost all of the mortgage payments, covered most of the bills and household expenses and paid for all the improvements on the home. Furthermore, she did all the cooking, cleaning and purchasing of groceries for the household. "[A]n equitable distribution of property should take into consideration [each spouse's] contributions to the marriage, including homemaking activities and primary caretaking responsibilities." *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 311, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988).

Next, the court properly considered the cause for the dissolution of the marriage, most notably the defendant's abusive behavior. The court considered his refusal to work, alcohol abuse, refusal to contribute to the household expenses and the fact that he had hidden his earnings from the plaintiff throughout their marriage. The court noted that the defendant failed to support the plaintiff while she was pursuing a college education, causing her to resort to welfare aid and food stamps. The court also found that the defendant destroyed the parties' property during his fits of rage and caused the fire in the parties' home. Section 46b-81 specifically empowers the court to consider "the causes for the annulment, dissolution of the marriage or legal separation . . . ." General Statutes § 46b-81 (c).

The defendant essentially argues that the court should have given greater consideration to the length of the parties' marriage, his age and his occupation. We repeat that the court is endowed with broad discretion in its consideration of factors enumerated in § 46b-81, as well as in deciding how much weight to accord to each factor. See *Burns* v. *Burns*, supra, 41 Conn. App. 721. The defendant's argument that his age, occupation and financial status make the aforementioned division unfair are significantly weakened by the court's finding that the defendant had no documented mental or physical health issues that prevented him from working and that he had hidden his earnings throughout the marriage. "[T]he trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Internal quotation marks omitted.) *Sapper* v. *Sapper*, supra, 109 Conn. App. 111. On the basis of the record before us, we conclude that the court acted within its discretion in entering the financial orders in the present case. We conclude that the court did not abuse its discretion in distributing the parties' marital assets.

## VI

The defendant's final claim is that the court improperly excluded a witness' testimony on the ground that the witness was not disclosed by the defendant as an expert in accordance with Practice Book (2008) § 13-4 (4). The defendant argues that the court improperly precluded the witness from offering factual testimony on the basis of her observations of him. We conclude that the record is inadequate for our review.

The following facts are relevant for our consideration of the defendant's claim. During the defendant's testimony on direct examination, he testified that he was

depressed, and his counsel asked, "[h]ow are you depressed? What . . . symptoms do you have of depression?" The defendant replied that the "case manager is here who would explain all these things." Near the end of the trial, the defendant's counsel sought to introduce testimony from Gina Green, the defendant's case manager at the homeless shelter where he was residing at the time of the trial. Counsel stated that Green was "a case manager at the Columbus House." The plaintiff's counsel then indicated that she would object to Green's testimony "if she [was] going to provide expert testimony." The plaintiff's counsel also stated that on January 24, 2007, she filed a motion to preclude the defendant from calling expert witnesses to testify at trial and that, at that time, no expert witnesses had been disclosed by the defendant.

The following are the relevant portions of the transcript pertinent to Green:

"The Court: Well, she's not . . . listed as an expert anyway.

"[The Defendant's Counsel]: No. Your Honor, I intend on having Ms. Green testify in her general . . . since she's been working for the [homeless shelter] for some time and . . . [the defendant has] been living there for ten months, she could testify as to her daily interactions with [the defendant] and that could impact some of the arguments that plaintiff's counsel [has] made in regard as to whether or not [the defendant] can work. . . . I think the plaintiff testified that [the defendant] can make between $60,000 and $65,000 a year, and, I think, her factual testimony is relevant. . . .

"The Court: Okay. She can come up and . . . testify. She can't testify as to any medical issues, no mental health issues, no physical health issues. She can testify as a roommate or [an] apartment mate . . . .

"[The Defendant's Counsel]: Yes. Do you understand those guidelines, ma'am?

"[The Witness]: Oh, yeah. I'm a certified alcohol and abuse counselor . . . and I'm a case manager and a counselor. . . .

"The Court: Okay. You really can't . . . testify as to any of that now, because . . . in the United States, at least, it's called fair play. . . . It's called fair play, and it's not so . . . you just can't voice your professional job, is what it's sounding like.

"[The Witness]: Well, originally I was subpoenaed to come. I don't . . . .

"[The Defendant's Counsel]: Probably prior counsel . . . .

"The Court: . . . I appreciate that you've sat through this, but I don't think anything that she would have to say other than, you know, observing him in the hallway and all . . . .

"[The Witness]: I have a professional role, and I'm his case manager . . . like to ask him when he pays his rent . . . we meet at least twice a week. We check out how he's feeling, what he's thinking. . . . It would really be on that kind of level . . . . And what I've observed . . . in the hallway. . . . I can talk to you on that level. . . .

"The Court: Yes. It's . . . see, the problem is . . . it's called trial by ambush, and we don't allow it, which means the other side has no idea what you're going to talk about. . . .

"[The Defendant's Counsel]: You're not going to allow her to testify briefly, Your Honor . . . .

"The Court: No."

It is undisputed that the court did not abuse the broad discretion it has to preclude any expert testimony not disclosed in accordance with Practice Book (2008) § 13-4 (4)[4] because the defendant never disclosed Green as an expert witness. See *Viera* v. *Cohen*, 283 Conn. 412, 444, 927 A.2d 843 (2007). The defendant, however, argues that the court should have allowed Green to testify about her personal observations of him, his demeanor, his efforts to obtain work and her investigation into his assets. The defendant's counsel at trial, however, failed to explain adequately what Green's factual testimony would be. The only information before the court regarding Green's factual testimony was Green's statement that she was subpoenaed and that she could testify about her observations of the defendant in the hallway and the information she obtained during their meetings, such as his thoughts, feelings or "when he pays his rent . . . ." The defendant did not request an articulation of the court's decision to preclude Green's factual testimony.

"An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear.

---

[4] Practice Book (2008) § 13-4 (4) provides in relevant part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. Each defendant shall disclose the names of his or her experts in like manner within a reasonable time from the date the plaintiff discloses experts, or, if the plaintiff fails to disclose experts, within a reasonable time prior to trial. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subdivision, or if an expert witness who is expected to testify is retained or specially employed after a reasonable time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. . . ."

. . . It is the responsibility of the appellant to provide an adequate record for review as provided in [Practice Book §] 61-10. . . . Conclusions of the trial court cannot be reviewed where the appellant fails to establish through an adequate record that the trial court incorrectly applied the law or could not reasonably have concluded as it did . . . . When the trial court does not provide the necessary factual and legal conclusions, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative." (Citations omitted; internal quotation marks omitted.) *Golden* v. *Mandel*, 110 Conn. App. 376, 380–81, 955 A.2d 115 (2008).

Our review of the transcript indicates that Green's proffered testimony possibly raises the issues of both relevance and hearsay, but we cannot speculate about the basis for the court's ruling as it is not clear. We conclude that under the present circumstances, the defendant has failed to provide us with an adequate record to review his claim. See id.

The judgment is affirmed.

In this opinion the other judges concurred.