MARGARET L. CZARZASTY *v.*
ANTHONY F. CZARZASTY
(AC 26601)

Bishop, Gruendel and Lavine, Js.

---

Argued March 12—officially released June 5, 2007

*Campbell D. Barrett,* with whom were *Kevin W. Hadfield,* certified legal intern, and, on the brief, *C. Michael Budlong* and *Heather St. Germaine,* certified legal intern, for the appellant (defendant).

*Stuart M. Roth,* with whom was *Andrew W. Krevolin,* for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendant, Anthony F. Czarzasty, appeals from the judgment of dissolution of his marriage to the plaintiff, Margaret L. Czarzasty, challenging the trial court's distribution of marital property. The defendant claims that the court improperly determined

that (1) his unvested interest in his employer's performance based deferred compensation plan was subject to equitable distribution under General Statutes § 46b-81 and (2) he violated the automatic orders applicable in dissolution proceedings by withdrawing funds from the parties' joint cash management account after the initiation of the dissolution proceedings and wrongly credited that money to his share of the marital estate. We affirm the judgment of the trial court.

The court found the following relevant facts. The parties were married on October 23, 1992. The plaintiff had commenced employment with Merrill Lynch in 1980 and, throughout the marriage, was employed in various capacities, including as a senior financial advisor, vice president and certified financial manager. At the time of the marriage, the plaintiff had assets in excess of $1 million.

The defendant was the president of Czar Construction Company at the time of the marriage. In 1994, after Czar Construction was dissolved, the plaintiff assisted the defendant in obtaining employment at Merrill Lynch. The defendant had no prior experience or training for a position as a financial consultant and had to undergo an extensive training program, which ended in early 1997.

Shortly thereafter, the parties began to work together as an investment team at Merrill Lynch. Initially, the parties split their team commissions. The plaintiff, who had twenty-two years experience in the field, received 70 percent, and the defendant, who had slightly more than three years experience, received 30 percent. Although the defendant's actual production at the commencement of the arrangement was less than 20 percent, the plaintiff agreed to the split because it would make the defendant more successful and would permit him to reach certain performance based goals more

quickly. The couple remained together as an investment team until 2001. At the time of trial, both parties remained employed at Merrill Lynch.

Merrill Lynch provides various financial plans to its employees, including the financial consultant capital accumulation award plan, the weatherbuilder account plan and the growth award plan for financial advisors. Each of these plans is in the nature of a deferred compensation plan and does not vest until retirement or until an employee becomes eligible for retirement and may be forfeited if the employee engages in misconduct or joins a competitor of Merrill Lynch within two years of retirement.

In addition, Merrill Lynch offers the investment certificate plan (certificate), a performance based deferred compensation award in the amount of $100,000 that is awarded at the conclusion of ten years of employment with Merrill Lynch as long as a specific production goal is met during the ten year period. As of the date of dissolution, the plaintiff had already received her certificate, and the defendant was two years shy of earning his award. The defendant was on target to reach his production goal prior to the expiration of the ten year period. The court determined that because the certificate was "intended to procure [ten] years of employment at a certain total level of attainment and that approximately two years of that period [would] take place postdivorce," the certificate had been "approximately [80 percent] earned" as of the date of dissolution. The certificate was not listed as an asset on the defendant's financial affidavit.

The parties also shared a joint cash management account with Merrill Lynch from which they paid household expenses and into which they both regularly deposited their paychecks. Shortly after the initiation of the dissolution proceedings, the defendant withdrew

$31,500 from this account and deposited it into his own account. The defendant testified that he withdrew the funds because he needed money to pay counsel fees and other expenses.

On May 11, 2005, the court issued a memorandum of decision dissolving the marriage of the parties and establishing financial orders. The court ordered, inter alia, that the parties retain the assets listed on their respective financial affidavits and that the defendant retain the $31,500 that he had wrongfully withdrawn from the parties' joint account in violation of the automatic orders as part of his property settlement. Additionally, the court explicitly found that the defendant's interest in the certificate was property subject to division pursuant to § 46b-81. Thus, the court, in effect, placed the certificate in the defendant's column. This appeal followed.

On appeal, the defendant contends that the court improperly determined that (1) the certificate is property within the scope of § 46b-81 for purposes of distribution and (2) he violated the automatic orders contained in Practice Book § 25-5 by withdrawing funds from the parties' joint cash management account. We are not persuaded.

"An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Quasius* v. *Quasius*, 87 Conn. App. 206, 208, 866 A.2d 606, cert. denied, 274 Conn. 901, 876 A.2d 12 (2005).

The first issue before us concerning whether the certificate constitutes property pursuant to § 46b-81 presents a question of statutory interpretation. It is well established that statutory interpretation involves a question of law over which we exercise plenary review. *Friezo* v. *Friezo*, 281 Conn. 166, 180, 914 A.2d 533 (2007). "Relevant legislation and precedent guide the process of statutory interpretation. [General Statutes § 1-2z] provides that, [t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Auto Glass Express, Inc.* v. *Hanover Ins. Co.*, 98 Conn. App. 784, 795, 912 A.2d 513 (2006), cert. denied, 281 Conn. 914, 916 A.2d 55 (2007).

"The distribution of assets in a dissolution action is governed by § 46b-81, which provides in pertinent part that a trial court may 'assign to either the husband or the wife all or any part of the estate of the other. . . . In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates.' . . . This approach to property division is commonly referred to as an 'all-property' equitable distribution scheme. See 3 Family Law and

Practice (A. Rutkin ed., 1995) § 37.01 [2] [a] [v], p. 37-19. [Section 46b-81] does not limit, either by timing or method of acquisition or by source of funds, the property subject to a trial court's broad allocative power. A. Rutkin, E. Effron & K. Hogan, 7 Connecticut Practice Series: Family Law and Practice with Forms (1991) § 27.1, pp. 398–400." *Krafick* v. *Krafick*, 234 Conn. 783, 792, 663 A.2d 365 (1995).

"There are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution)." Id., 792–93. It is the first part of this analysis that we consider in this case.

Neither § 46b-81 nor any other closely related statute defines property or identifies the types of property interests that are subject to equitable distribution in dissolution proceedings. When a statute does not define a term, we look to the common understanding expressed in the law and in dictionaries. See General Statutes § 1-1 (a); *State* v. *Webb*, 62 Conn. App. 805, 813, 772 A.2d 690 (2001).

Black's Law Dictionary (6th Ed. 1990) defines property as the term "commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. It extends to every species of valuable right and interest, and includes real and personal property, easements, franchises, and incorporeal hereditaments . . . ." The term has been defined elsewhere in the General Statutes. See General Statutes § 52-278a (e) (for purposes of

attachment, property means "any present or future interest in real or personal property, goods, chattels or choses in action"). Rather than narrow the plain meaning of the term "property" from its ordinarily comprehensive scope, in enacting § 46b-81, "the legislature acted to expand the range of resources subject to the trial court's power of division, and did not intend that property should be given a narrow construction." *Bornemann* v. *Bornemann*, 245 Conn. 508, 515–16, 752 A.2d 978 (1998).

In *Rubin* v. *Rubin*, 204 Conn. 224, 527 A.2d 1184 (1987), the court stated that "[p]roperty entails interests that a person has already acquired in specific benefits." (Internal quotation marks omitted.) Id., 230–31. The court held that a contingent remainder interest in an inter vivos trust held by a spouse did not constitute property subject to assignment by the trial court to the other spouse pursuant to § 46b-81 in rendering judgment dissolving the marriage because, while the plaintiff's mother was still living, these interests constituted mere expectancies, as the mother retained the power to revoke or reduce her son's contingent interest at any time. Id., 235–39.

Similarly, in *Simmons* v. *Simmons*, 244 Conn. 158, 708 A.2d 949 (1998), the Supreme Court concluded that a medical degree earned by one spouse during a marriage is not property subject to distribution under § 46b-81 because the medical degree entailed no presently existing, enforceable right to receive income in the future but, rather, represented only an opportunity for the degree holder to earn future income. Id., 168. The court held that "[t]he possibility of future earnings . . . represents a mere expectancy, not a present right"; id., 170; and that "[t]he terms estate and property, as used in the statute [§ 46b-81] *connote presently existing interests*." (Emphasis in original; internal quotation marks omitted.) Id.

One year later, in *Smith* v. *Smith*, 249 Conn. 265, 272, 752 A.2d 1023 (1999), the Supreme Court held that the trial court improperly retained continuing jurisdiction in anticipation of dividing the plaintiff's expected interest in a family trust, if and when the plaintiff ever obtained such an interest. The court's conclusion was based, in part, "on the fact that the marital estate divisible pursuant to § 46b-81 refers to interests already acquired, not to expected or unvested interests, or to interests that the court has not quantified." Id., 274. The court opined: "The purpose of a property division pursuant to a dissolution proceeding is to unscramble existing marital property in order to give each spouse his or her equitable share at the time of dissolution. . . . [A]n attempt to divide *expected* property is outside the scope of the statutes because it does not divide the property that the [parties] possessed during their marriage." (Citations omitted; emphasis in original.) Id., 275.

Earlier, in the employment context, the court, in *Krafick* v. *Krafick*, supra, 234 Conn. 783, was called on to determine whether the term "property" in § 46b-81 was broad enough to include vested, though unmatured, pension rights. The court concluded that the legislature intended the term to be broad in scope and held that vested pension benefits come within the meaning of the term "property" in § 46b-81 "as the interest in receiving such benefits is contractual in nature"; id., 795; and because they "represent an employee's *right* to receive payment in the future, subject ordinarily to his or her living until the age of retirement." (Emphasis in original.) Id., 797. In so concluding, the court noted that the classification of "vested pension benefits as property does not run afoul of the limitation, recognized in the context of inheritance and trust interests, that § 46b-81 applies only to presently existing property interests, not mere expectancies. . . . An expectancy is only the

bare hope of succession to the property of another, such as may be entertained by an heir apparent. . . . As we have stated, [s]uch a hope is inchoate. *It has no attribute of property*, and the interest to which it relates is at the time nonexistent and may never exist. . . . The term expectancy describes the interest of a person who merely foresees that he might receive a future beneficence . . . . [T]he defining characteristic of an expectancy is that its holder has no *enforceable right* to his beneficence. . . . The fact that a contractual right is contingent upon future events does not degrade that right to an expectancy." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id.

The court employed a similar analysis in *Bornemann* v. *Bornemann*, supra, 245 Conn. 517–18, in which it concluded that stock options are analogous to pension benefits in that they bestow a right upon the holder to receive a promised benefit under prescribed conditions. "[M]uch like the right of a pension beneficiary to collect a pension once the particular conditions under which the pension was offered have been satisfied—typically, the attainment of a prescribed age and the fulfillment of a required number of years of service for the employer—the holder of a stock option possesses the right to accept, under certain conditions and within a prescribed time period, the employer's offer to sell its stock at a predetermined price. . . . Should the employer attempt to withdraw the offer, the employee has a chose in action in contract against the employer. . . . Conversely, [t]he defining characteristic of an expectancy is that its holder has no enforceable right to his beneficence." (Citations omitted; internal quotation marks omitted.) Id., 517. Therefore, although the stock options at issue in that case had not yet "matured" or "vested" at the time of the dissolution, the options created an enforceable right in the defendant husband,

which the court held to be a presently existing, contractual interest in property that is encompassed within the broad definition of property under § 46b-81. Id., 517–18.

Accordingly, until 2001, the test for determining whether an interest or benefit constituted property for purposes of equitable distribution under § 46b-81 had been whether the party had an existing enforceable right to it. In cases in which such a right did not exist on the date of dissolution, our Supreme Court refused to recognize that interest or benefit as property subject to distribution under § 46b-81. Then came *Bender* v. *Bender*, 258 Conn. 733, 785 A.2d 197 (2001). In *Bender*, the record disclosed that, at the time of the marital dissolution, the defendant had been employed as a firefighter for approximately nineteen years and that he would be entitled to receive a municipal pension in the event that he completed twenty-five years of service. Thus, when the marriage was dissolved, the defendant did not then have a present right to the future receipt of a pension because there was no vesting of pension rights before twenty-five years. His rights vis-a-vis his pension were limited to a return of his contributions to the pension during his years of service. The principal issue confronting the court in *Bender* was whether the defendant's unvested pension benefits were property pursuant to § 46b-81. Answering that question in the affirmative, our Supreme Court focused not on whether the defendant had any presently existing enforceable rights regarding his pension expectancy but, rather, on whether his eventual realization of pension benefits was more than an expectancy. The court held that "in determining whether a certain interest is property subject to equitable distribution under § 46b-81, we look to whether a party's expectation of a benefit attached to that interest was too speculative to constitute divisible marital property." Id., 748. The court concluded that the trial court had correctly classified the entire unvested

pension as marital property, notwithstanding the absence of any presently existing enforceable right, on the ground that his expectation in the pension plan was "sufficiently concrete, reasonable and justifiable as to constitute a presently existing property interest for equitable distribution purposes." Id., 749.

In so concluding, the court seems to have recast the analysis used to determine whether an interest or benefit is property under § 46b-81 to a more probabilistic assessment untethered to the existence of a presently existing enforceable right. Consequently, since *Bender*, whether a party has a presently existing enforceable right to the present or future receipt of the asset appears no longer to be determinative. Instead, the determination of whether a claimed asset is subject to distribution pursuant to § 46b-81 appears to depend on the degree of certainty revealed by the evidence that the litigant will eventually receive the asset. In sum, in accordance with the dictates of *Bender*, in confronting property claims under § 46b-81, trial courts must make an assessment on a case-by-case basis of the likelihood of the person's receiving the asset claimed by his or her spouse. If the likelihood is not too speculative, then it is property subject to valuation and distribution.

In the present case, the crux of the defendant's argument is that the defendant's prospective receipt of the certificate is unlike the pension in *Bender* because, in this instance, the defendant's receipt of the certificate is, in part, contingent on his future performance, whereas in *Bender* the defendant merely had to remain employed as a firefighter for an additional period of years for his pension to vest. The defendant claims that because he had no presently existing right to the certificate at the time of dissolution, it was, therefore, no more than a mere expectancy. As in *Bender*, the trial court in this instance did not comment on whether the party had a presently existing contractual right to

the future receipt of the asset in question. Rather, the court made an assessment of the probability that the defendant would, in fact, receive the asset. In its analysis, the court found that the defendant had worked for Merrill Lynch for eight years, and, therefore, was only two years shy of receiving the certificate, and his level of production was on target to meet the required goal. The court opined that "[i]f [the defendant] meets the conditions of the certificate . . . as he is fully capable of doing, he has a legal right to the payment of it." Relying on the court's statement in *Bender* that "sources of deferred income, such as pension benefits and trust interests, whether vested or not, constitute property subject to distribution, provided that the contingent nature of the interest does not render the interest a mere expectancy"; (internal quotation marks omitted) id., 747; the court in this case found that "[t]he contingent nature of the interest here is readily obtainable by [the defendant], based upon his employment history, performance record and the projections of the Merrill Lynch managing director for his region." The court concluded, therefore, that the expectation of receiving the certificate was not so speculative as to constitute a mere expectancy and was sufficiently concrete as to constitute property pursuant to § 46b-81. Although the court, in *Bender*, did not articulate the degree of certainty that an expectancy must possess in order to qualify as property subject to equitable distribution, we cannot conclude that, in the face of this imprecise precedent, the court abused its discretion in considering the certificate when fashioning its financial orders.

The defendant next claims that the court improperly determined that he violated the automatic orders under Practice Book § 25-5[1] when he withdrew funds from the parties' joint cash management account. We disagree.

[1] Practice Book § 25-5 (a) provides in relevant part: "The following automatic orders shall apply to both parties, with service of the automatic

As noted previously, this court will not disturb a trial court's orders in a domestic relations case unless the court has abused its discretion. In its memorandum of decision, the court found that the defendant "emptied the parties' joint financial account by withdrawing $31,500 less than two days after the commencement by the plaintiff of the divorce, excusing it by saying he needed money for attorney fees and other expenses." The court found that, in doing so, he violated the automatic orders. By way of articulation, the court further found that, since 1997, the parties had maintained the joint account into which both of their salaries were regularly deposited and from which the monthly mortgage payment for the marital residence was automatically withdrawn. The defendant withdrew $31,500 from that account without consulting the plaintiff, leaving insufficient funds to cover the monthly mortgage payment. The court found that the withdrawal was less than two days after the initiation of the dissolution action and after he had consulted with counsel, and that although the defendant claimed that he needed the funds for counsel fees, there was no credible evidence that it was used for that purpose or for any other purpose allowed under the automatic orders.

On the basis of the evidence presented, we conclude that the court reasonably could have reached the conclusion that the defendant violated the automatic orders in depleting the parties' joint account.[2]

orders to be made with service of process of a complaint for dissolution of marriage . . .

"(1) Neither party shall sell, transfer, encumber . . . conceal, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, individually or jointly held by the parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorney's fees in connection with this action. . . ."

[2] We further note that the defendant was not penalized for violating the automatic orders. He was allowed to keep the funds that he withdrew as part of the property settlement. In its articulation, the court indicated that it considered one half of the $31,500 from the joint account to be the

The judgment is affirmed.

In this opinion the other judges concurred.

plaintiff's share of the withdrawn funds and included her $15,750 in the property distribution received by the defendant.